We have four argued cases this morning. The first is No. 24-2247, Andrews Construction, Inc. v. United States. Mr. Jordan. Good morning. May it please the Court, this Court should vacate the Court of Federal Claims injunction and reverse this decision of the Court of Federal Claims. The injunction must be vacated because it ordered the award of a contract to an offeror ineligible to receive award under the terms of the solicitation and the Federal Acquisition Regulation, the FAR. Specifically, the injunction ordered an award before the U.S. Army Corps of Engineers, ACE or Corps, made a determination regarding whether Andrews pricing was fair and reasonable as the agency was required to do under this solicitation and FAR Part 15-402. Further, the injunction ordered the award of a contract to an offeror, the U.S. ACE, rationally determined was technically unacceptable. Given that the injunction must be vacated, the next question the Court must answer is, where do we restore the procurement after doing so? In our briefs, we offer two paths. One, at the very least, is to restore the procurement to the position where pricing clarifications are occurring. And ultimately, what we submit to this Court is to restore the procurement to the posture it was in post the technical unacceptability finding. And essentially, the place where the procurement was when the protest was brought in the Court of Federal Claims. So I'll first address pricing and then go to the technical unacceptability finding. There are a couple of FAR challenges that Andrews raised also that the trial court did not reach. And if so, what do we do with those, even if we were to agree with you? So those are addressed in footnote two of the Court's decision. And they're two very discrete points that the Court did not address. I don't, so the Court did not address them. So in theory, that is something it could do. But I think the, depending on what this Court decides, it may not need to do that. So one is regarding the agency not offering enough of an explanation regarding an independent evaluation. They made an independent evaluation and rejected it. And so there's no prejudice there. I'm sorry, I'm confused. We would have to, or the claims court would have to address the two issues if we agreed with you that the bid was non-compliant, right? So I think depending on what this Court says, it could effectively compel the trial courts to basically implement whatever this Court's language is as opposed to leaving it up to the Court. But I think- How could we do that? We don't have briefing on that. And it was an issue that Andrews raised that the trial court never passed on, right? Correct. So we, best case for you, don't we have to send it back for the trial court to reach those FAR issues that it said in the footnote you referred to they were not addressing? So the Court would need to address them. I think in terms of what else the Court says in his opinion, it can circumscribe how broadly the Court can consider that, depending on what other- What are the two FAR issues? So my understanding of the FAR issues is, one, there's an amendment to Amendment 7. We're now on Amendment 14 at the time the protest was brought. And it basically, their protest is that that amendment description was not adequate enough because it simply stated this is being updated. And they're making a FAR challenge based off of the supposed adequacy of the presumed to have read everything in the amendment. It's in the record. They read it. So I can't see any universe where that's a prejudicial violation. And then the second one was regarding the agency. So there's the agency protest followed by the GAO, followed by the Court of Federal Claims, and then ultimately this Court now. And they are saying that the agency person within the U.S. Corps of Engineers did not offer effectively a judicial-like opinion regarding the adequacy of their protest. But if this Court rejects their protest, then that's really just a non-prejudicial claim that there's no discussion in there. But that's not even what the reg requires, what we argued below. But the Court didn't address that in its opinion. How come you didn't say all of this in your brief? So we wanted to focus on specifically what the Court decided, and that's what we focused on. But you're trying to tell us, please don't remand this regulatory FAR challenge because all of the alleged errors would be non-prejudicial. That's what you're saying now. That's what you could have said in your brief. You didn't say it in your brief. So I'm just trying to figure out why didn't you say it in your brief? So I think procedurally, if the Court remands it to the Court of Federal Claims, it can provide direction based off of what it says as an opinion based off of the other matters we did raise. And so I think in a very narrow formal procedural sense, it could be remanded. But then the Court would basically be bound by what this Court says and would not have free reign to just consider all these other issues. But I think a remand would be something this Court can do. And I think depending on what other languages in the opinion can really narrowly focus the trial court. And so that's what I'm offering here. Let's talk about whether there should, in fact, be a remand. Isn't it a bit troubling here that initially the agency seemed to be completely fine with Anders' proposal, expressly founded, technically acceptable. And now your argument on appeal is that three to five ways it's technically unacceptable. It seems like there's a mismatch there and one that might be a little bit troubling. So I think that fact colored a lot of the trial court's opinion, which I think caused some issues with its opinion. But agencies routinely reevaluate proposals in response to criticisms, complaints by other offerors. This was a procurement where there were three offerors. The offeror who did not intervene and is not here raised some issues regarding the initial evaluation, which did not have any details of the source evaluation board. It was a checklist and they noted some issues and the Court said, oh, we need to do a more detailed dive into this. And so we're going to start over and look at it afresh. And that's what they did. And in the new evaluation, they documented in the SSB what specifically was missing there. And the most salient one for our appeal regards the completion report requirement, where it actually explains in detail what the solicitation says, what was actually submitted, and why it was inadequate. And that was entirely absent from the initial evaluation. And I think what the trial court did was it simply saw a table of contents where it said the word, and I'm speculating, I don't know exactly what that first word was. Is that what you think the agency did too? I mean, how did the agency get it that wrong in its initial evaluation? One can speculate, but really all they had was a checklist and that's all they had. They didn't explain their reasoning. And so that's another reason why the agency wanted to reevaluate, because we could have this other offeror protest that and that would subject us to litigation risk too for not adequately explaining its determination. And I think they would have a very good chance. And they mentioned that in their letter requesting a reevaluation because of what the solicitation said. It says explicitly submit a sample completion report. And the three points that are before us today were in this letter from the other offeror? I don't think these specific findings that the USACE made on reevaluation were delineated in the other offeror's letter. They had problems with their own technical on acceptability finding and said, you erred with respect to these. Please do a reevaluation. And then the court, the core reopened it up and then did a new evaluation of all three offerors with this clean slate, which is in their discretion to do. What if the only defect was the record keeping requirement? That perhaps the proposal was just a little too skeletal in its outline of how it would do the record keeping? That seems like a rather minor requirement. Would that alone be good enough to conclude that their entire proposal was technically unacceptable? Yes, it would. Under the terms of the solicitation, failure... Wondering if there's some rule of thumb that certain requirements are so relatively minor that there should be an opportunity to correct it as opposed to just be outright rejected as being technically acceptable. And I'm wondering if this record keeping requirement would fall into something like that. So with respect to minor clarifications, that typically concerns stuff like typos and other sort of obvious things. What we have here is an assessment by the contracting officer who determined that an outline of administrative and record keeping procedures was entirely absent. And so to effectively allow Anders to revise its proposal without being fair to all offers and opening up would be... It was entirely absent? There was a two-sentence statement that effectively was a certification that they would comply... Which is repeating the requirements. Correct. It was not an outline of what they would do point by point. And so that was absent, that was explained... What would be an example of a satisfactory outline of record keeping beyond what was said here? So I think a documentation of what exactly they would do, a discussion of their procedures... I think with the record we have here, the contracting officer is saying this right here is inadequate. The solicitation specifically says that details are required and that's inherent within the evaluation process for contracts. And it was explained... And also it's under the APA standard as well to defer to the Corps' assessment of what kinds of requirements it needs for these safety diving issues and what was not proper for the trial court to determine that this was good enough for the trial court's judgment. So I think that's another important thing too. And then the solicitation makes clear that you need to have all these requirements. And so any one is a basis for disqualification. I believe it states that almost 16 times the failure to include all of that. And so that was absent. And that's a basis there. But as I was pointing out earlier, the real, I think, question for this Court is do we restore it to the place when the protest was brought or do we do it with pricing? I think the injunction language is very troubling. I'm happy to address that if the Court feels need to specific injunction language. But I think based off of definitely the completion report requirement and then the other two we brought, the proper remedy would be to restore this procurement to when it was brought and the Corps will take whatever action it needs to or decides to. I'll reserve the rest of my time for rebuttal. I'm happy to answer any other questions the panel may have. Okay. May it please the Court, John Forrester again here on behalf of Andrews Construction. Your Honors, we're here today because the government has refused to award a contract to a lowest-priced, technically acceptable bidder because they apparently now desire... Do you think it's the standard review here? Well... You used the APA, right? That's correct, Your Honor. And we just are trying to figure out whether there was a rational decision by the agency. That's right. And so what I would like to go through, Your Honor, is the three points. It used to be five points. This has changed over four years of argument and eight different briefings from the government, but we're now down to three points. And we've got the FAR issues as well, and this is a de novo review. We do believe that that would independently require an injunction, in this case, based on clear breach of the regulation, which is the second way that this Court can find arbitrary and capricious. But if I could get to the three main points, what they rest on, which now seems to be their primary argument, is lack of a completion report, Your Honor. So what you would look at there, and Your Honor asked about what the rule of thumb is for these standards, that is, it's Hornbook law that agencies must... Where's the completion report they submitted? I'm sorry, Your Honor. Where is the completion report? It is Appendix 5981 through 5996. And so if you look to, Your Honors, the actual scope of the work here, and that is, if I could guide you through this, this describes what a completion report is. First, if you look at Appendix 47... Where's the sample completion report? That is 5981, Your Honor, through 96. It's titled, and it's got all the requirements that I would like to walk through. It's a very simple... I guess, to be more specific, there needs to be a sample completion report from a dive under a previous contract. That's correct. You're going to show us a previous contract sample completion report? That's correct, Your Honor. And it's right here, what I've just cited to you. If you look at the first page, 5981, completion report includes all of these items. And if you look to the solicitation, it tells you exactly what that is. So this is where we have it, Your Honors, and this is what is in a completion report. What page are you referring to from the solicitation? 4753, Your Honor. Thank you. This describes the scope of work, which is three types of dives. It's removal, repair, and investigation dives. So there are different types of dives. It doesn't disclose what they discovered, right? This is the scope of work for this contract. They can issue three different types of dives. Yeah, but what I'm saying is what you identify as the completion report doesn't describe what was discovered as a result of the dive, which is part of the completion report requirement. I would respectfully disagree, Your Honor. With what is part of that? It is 59... No. Do you agree that that's part of the requirement? Results and findings of a dive are included in what is listed... Okay, so that is a requirement. It is a requirement. Where do we find that in this? That is, Your Honor, 5984, 85, 86, 87. This describes, and if you look to what the completion report is, you must respectfully request, Your Honor, go to the section 14, record keeping. The first sentence describes what you have to do after completion of a dive. Again, there are multiple types of dives here. The last sentence talks about the additional requirement for an inspection. I'm asking where are the results of the dive? Your Honor, in these... In what you identify as a sample completion report. Yes, Your Honor. So starting on 5984, you have when the dive was performed, where the dive was performed, how many dives were performed. Results.  We have results of the work performed, Your Honor. We have that on page 5987. They completed the pipe support rack. These are results and findings. We have who did the work, what work was done, where the work was done, results on any issues, results on the work that was completed. We have notes and comments that provide results and findings on 5985. Are there any clear readable sketches to supplement the text descriptions? So this is my point, Your Honor. That is not required but for an inspection dive. And if you look at section L, the completion report, it does not require an inspection dive report. This was a repair dive or removal dive. That additional information is only required for an inspection dive. So the government is conflating the language in the section L record keeping. The offer of more than a sample completion report from a dive under a previous contract period. That means you can provide one for any of the types. And if you look at paragraph 14, it is an additional requirement for inspection dives. For repair dives, removal dives, there's no requirement for the information on inspection dive. Because this is, Your Honor, may also be required. Sketches are only required in certain situations. And that's after an actual inspection dive. The record keeping is a performance specification. That governs what happens on the job. Section L is what comes with the solicitation, which is caveated by section 14. So if you look at the first paragraph of record keeping section 14, the dive logs, time logs, JHA, JSA, pre-dive safety meeting, etc., are all what's in the completion report. And if you look to the last sentence, what the government is conflating is, there's an additional requirement for inspection dives. This is a particular unique type of dive. If you're doing an inspection dive after the work begins, you have to provide a condition of all items surveyed or inspected. That's not required with the submission. That is only if you're actually doing an inspection dive. Section L requires a sample completion report from any dive, which is what we did. And that does not require the condition of all items surveyed and inspected. But it clearly has results and findings through the comment boxes, through the who, what, when, where, and why, the actual tools that were used. You've got the result of the work, result of any issues or concerns. Did you make this argument about inspection dives in your brief? Your Honor, what we did was rely upon primary. I'm just trying to remember your red brief, and I don't remember this distinction you're trying to make about different types of reports. We argued that that was a requirement in the second sentence. It was only required after an actual inspection dive. Right. And I'm just wondering, where did you say that? Your Honor, that argument I know is in our brief, that it was only required after the dive itself, Your Honor. But if we look to the scope, this was clearly only required in inspection dives. And so we've met the actual requirements of a completion report. Now, Your Honor, looking to the second issue, Your Honors, and even if this was a concern, meaning even if we had to provide an inspection dive sample completion report, which isn't in there, we've got to look to the solicitation, which just requires, in Section L, a sample completion report from a dive. Under bank note, if there's a minimum requirement, the government has to state it in the solicitation. If they wanted a completion report from an inspection dive, they had to say so, and they did not. Now, Your Honor, under the second issue, under this first issue, even if there was inspection dive required in a sample report, this would be a past performance, and we are not allowed to be unfavorably evaluated per FAR 15-305. The next is the lost diver plan, Your Honors. Running the lost diver plan, it was clearly included and discussed what happens when a diver's umbilical cord is severed. Under all of these operations, we've decided... That's only one aspect of a lost diver plan, right? No, sir, Your Honor. There's no way to be lost if you're tied to the boat, if you're tied to the land. You can't lose something you're tied to, Your Honor, and so they, the Corps, has known that. The government has known that since March of 2022, and they have clearly tried to avoid providing this. We've got a technical acceptability evaluation that was accurate. It goes through, and it's very similar to... The only circumstance of a lost diver is when the umbilical cord is severed? They were required, yes, Your Honor. They are required to be tethered, and that you cannot be lost... But does a detached umbilical necessarily mean you're a lost diver? Not necessarily, but if... That's the issue here, is that, yeah, the umbilical could become detached, and then you take, you know, certain actions in light of that, but that doesn't mean that the diver is, I don't know, floated away and become disoriented and is now nowhere to be found. But it means if the umbilical cord is severed, he is either lost... Well, he is lost because he's not connected. So this was not a plan that required you to put forth plans when... I'm wondering if it's reasonable to understand the requirement of a lost diver plan as being that the diver is truly lost and the whereabouts are unknown, as opposed to divers right there next to the umbilical cord, but is detached from the umbilical cord. And so, yes, certain actions need to be taken in that circumstance too, but it's not quite the same circumstances when the diver is just gone. I think the point is, Your Honor, and I don't disagree with that. The point is, Your Honor, the lost umbilical cord discusses exactly what happens when a diver is lost. When an umbilical cord is severed, they are lost. They cannot be lost without it. What does it mean when you're in your safe practices manual, first step for severance of complete umbilical is diver activates bailout bottle and returns to surface. What is a bailout bottle? It's an excess bottle. It's a backup bottle, essentially. It also discusses that they use the emergency gas on the bail stage. It helps the diver come back up to the surface. Correct. And then we send another diver down to go find them. When we deploy a standby diver, if they have not immediately surfaced that diver after being alerted, they deploy a marker buoy at the diver's last known location, i.e. before lost. The last known location discusses a lost diver. This is clearly inferable from the procedure and there was no requirement to have an actual title, quote, lost diver plan. This standby diver provides a new hose or bailout bottle. That seems to suggest standby diver is there to help out the detached diver to provide them a new set of equipment. It's not necessarily, you know, a recovery. This is for emergency situation. This is for life saving because at the end the dive is terminated. This is to get down and get air to the person that is dying because they're out of air or they have been lost from their umbilical cord. And it sets the diver down line to the bail stage. So terminate the dive and follow proper procedure. This is all about when a diver gets lost from their umbilical and that is the life saving procedure to go down and get that lost diver the available air. The SSEB evaluator also had trouble finding your lost diver plan and the government argues even if it's there it's spread out over maybe a thousand pages which would make it very difficult to use in an emergency. What's your response to that? Practically these bids are thousands of pages. So that's a reality of this situation. However, our lost diver plan is located in one spot. We've cited that over and over. What is throughout are the examples of those documentations that go through. What happens on the dive that goes through the procedures. Those have been cited by the claims court and by our brief your honor. Which pages would I look to to see your quote lost diver plan? The lost diver plan is appendix 6859. Exactly what the judge and I were just going through. That's the plan. That's your protest, right? It is. 6859. It is. And that that cites to volume one of our lost diver plan in the safe practices manual. What's throughout the briefing, throughout the briefing or appendix rather are the discussion of this documentation in the example forms. Can you point to the page though that the evaluator you would say I guess arbitrarily overlooked as your lost diver plan? It's not that they overlooked it, your honors. It's that they decided that this was not a lost diver plan. What page is it, please? Appendix 6859. It is the section 7. That's the protest. I thought you just agreed. It is the protest. I'm sorry, your honor. Your honor, I do know it's page 456 of volume one. 465 of volume one. Yes, your honor. Thank you. And as the lower court or as the claims court noted, it is a lost diver plan in everything but a name. It really doesn't seem to be. If you look at page 12 of the government's reply brief, they say this provision defines four circumstances in which a dive can be terminated, none of which are umbilical cord separation. And it says one circumstance for dive termination is communications are lost. Well, communications could be lost without severing the umbilical cord, correct? This is not a lost communication plan, your honor. That's the argument they're making now that we may have included lost communications. We may have included lost bearings. That's not what the requirement states, which goes back to bank note, which says if there is a requirement, it must be explicitly stated. And the government lives and dies by the language of the solicitation. And if we look to the- How do we know that a lost diver plan doesn't include a loss of communication? Because it isn't stated. Nowhere does it state a lost communication plan is required. We provided a lost- Which is what we provided. Which discusses exactly what happens- How do we know? The government says a lost communication needs to be part of a lost diver plan. Why is that wrong? The solicitation doesn't say that, your honor. That's in their argument. That's a made up requirement, which is why we've been fighting this fight for so long, your honor. If there's a minimum requirement of a lost communication plan, it should have been stated and we would have provided it. But it wasn't required, your honor. And if I could briefly hit- Wait, wait. Yes, sir. How do we know that a lost diver plan doesn't include lost communication? Well, the duty is on the government to state if you wanted something besides a lost diver, lost communication- Okay, but I'm trying to interpret what lost diver plan means. Where does the solicitation describe what a lost diver plan is? It does not, your honor. And so what we have- It does not describe it to include- It's a question of interpretation as to whether a lost diver plan is just a severed umbilical cord or whether it includes lost communication and other things? Your honor, if that- Is that the issue? If it's to- No, your honor. No. Why is that not the issue? Because if it was to include lost communication, that would be on the government to provide. Lost diver, and what we have discussed is a last known location of a diver, i.e. a lost diver. That is what we provided. It was not arbitrary and capricious for this court to confirm that. That's what was found originally as technically acceptable. Under a case law like Galen Medical and Bank Note, aren't we, as a court, required to ask was the government applying an understanding of the solicitation requirements in a way that's reasonable and consistent with those expressed requirements? And if here the government concluded, well, when we are talking about a lost diver action plan, we are talking about a diver whose current whereabouts are unknown and now we need to do some kind of rescue operation. That sounds like a reasonable understanding of the lost diver plan requirements. Your honor, what they are asking for now was not required in the solicitation. That's what you say, but you are not a witness here as to what the meaning of lost diver plan is. And we are trying to understand why the contracting officer's interpretation of what that means is not reasonable. Well, they said they couldn't locate it and it wasn't titled a quote lost diver plan. While they accepted the competitors that was not titled that exact same thing as well. We have clear description of what happens when there's a last known location of a diver and the umbilical cord is severed. That's a lost diver plan. If they wanted it to be titled, that would have been a requirement. If they wanted something more, that would have been a requirement. What is your evidence that lost diver plan is limited to severed umbilical cord? Your honor, the evidence is that one cannot be lost if we're tied together. I cannot lose you if we're tied together, your honor. You cannot be lost. That is what describes and then the text of it if you look at discusses the last known location. It's clearly a lost diver plan and the court saw it as such. Do you agree you can have a detached umbilical and not be lost? Yes, yes. But when you're lost. Therefore, this detached umbilical cord scheme that you have, it's maybe not a complete lost diver plan. It's at best partially addresses a scenario where a diver has been lost. I would say it's more broad than it needs to be because it covers both. When a diver is lost and when the diver is not lost and umbilical cord is severed. The only requirement we have to meet is that it covers what happens in the event that they're lost and it does that, meeting that requirement. If I could just briefly state, your honors, that once landers were found technically acceptable, section M, which counsels quoted over and over in their briefs. The third requirement here that we're talking about. I'm talking about pricing, your honor. No, no, but that's not the third requirement. The third requirement is this outline. Yes, your honor. The outline of administrative procedures. All you did was repeat the requirements in the same language as the solicitation, right? Well, your honor. How is that an outline? Because it describes both parties. It describes two different people and seven different functions of what's required. You've got a diving supervisor, number one, and they have to perform five separate hours. Is it true that this is just a repeat of what the solicitation says? Which is all the solicitation requires. That's an outline? It's sufficient to repeat what the solicitation says? We've outlined the requirements, your honor. We've got what the supervisor is required to do to upkeep the six different types. The answer is yes. That's what you satisfy the solicitation by just churning and repeating what the solicitation says? No, your honor. We have an outline and then we have the sample forms, your honor. We have the outline with what the diving supervisor does. We have what all the team members must do. How does that go beyond what the solicitation itself says? Because you can look to the actual forms that we submitted with the completion report that show all those forms and how it's done. This is the how and who, excuse me, this is the who and what and the how are the sample forms that we've attached to our completion report. It meets all the requirements of an outline. They are unhappy because it's not comprehensive enough. That was not a requirement in the solicitation to have a comprehensive outline. Outlined by its very definition does not require all the details. This discusses the who, what, when, where, why, and how. Who signs in, who checks all the forms, who upkeeps them, and then we've attached the completion report which has those forms which shows even more detail, your honor. I assume you're talking about 6861 where your protest says go to volume one, page 1037? No, your honor. I'm referring again to the completion report at... No, I'm talking about the outline for this last issue. Yes. If I said to you, where do I see your outline? I just assumed you weren't going to be able to give me a JA page, but if you can, that's great. Well, the appendix is 5979. Okay, 5979. Yes, your honor. And I'll see something more there than just you repeating the language of the solicitation? No, your honor. You'll see that exact outline, and then if you want to look at the forms themselves, your honor, that is in 5981. Let's put aside the forms. Let's assume the forms don't qualify. Does this do anything more than repeat the requirements of the solicitation itself? No, your honor, but it meets the requirements of the solicitation because it required an outline, and that's what we gave. If they said they wanted more of an outline than what was required, we would have provided that. That's not what they requested. We met the requirement of an outline, and the requirement that it be more comprehensive had to have been stated, your honor. I think we're out of time. Could I just ask, if hypothetically we were to remand this case, then where would be the right place to return the entire solicitation issue? Do you agree with where the government identified what would be the right spot of starting over? It would essentially be to return this to the situation it is in the injunction order itself, which is we are the technical acceptable bidder. This is after Amendment 7. Technical acceptable bidder, and once you look at Section M2C of the award factors, you get the award. I'm sorry. Maybe I didn't make it clear. What if we conclude that at least one of the three identified problems the government is presenting today is correct, that we, under the deferential standard review, would agree with that? So therefore, the injunction is gone, and this all has to start over at some point. Where would the start over point be? In the quarter at the solicitation level between the court and my client. I'm sorry. What? You're asking if this court were to remand to the trial court, to the court of claims? Well, if they had a concern . . . The question is, if we determine that the bid was noncompliant, where do we go? What's left? If the bid was not compliant, then you would bring it back to the only party that was privately determined to be technically acceptable, which is Anders, and they can enter into further discussion. But Anders would not be deemed to be technically acceptable. Then the solicitation could be re-bid. I mean, if there are no acceptable bidders, because the other two bidders have already been kicked out, and Anders is not compliant, then there are no acceptable bidders. But . . . Just assume for the sake of argument, I think this is what my colleagues are asking. If I agree with the government on everything they've argued, what's the disposition in this case? What do I do next? You would . . . whatever concerns that you see or support of the court, you would remand that to re-evaluate as far as, well, as far as the outline. If it wasn't comprehensive . . . If I send it back . . . First, I assume I send it back to the court of federal claims where the case came from. Do you have some issues that you argued were problematic that the trial court didn't reach? We have the FAR regulations. What do I do about those, if anything? Do I ignore them, or do you go forward on them? Well, under de novo review, we believe you can review this here. Assume I'm not. Yes. Then what do I do with those? Direct the trial court to address those issues, Your Honor. And under that scenario, we have the allowance of Amendment 7, which was provided . . . We don't need to get into the substance of them, but you would want a chance to go forward on those remaining issues. Yes, Your Honor. But what if it would seem like the result of us, if we agree with the government on all their issues, is that your bid is technically unacceptable? So if that's the case, can you really get any relief under the FAR issues? If we are not technically acceptable, the FAR issues would provide a proper injunction, but we wouldn't be entitled to an award. So because they violated the FARs that we've cited, providing the Amendment 7 to the disqualified members, et cetera, then that could be an injunction, but you could not award to Anders. Injunction to do what? Well, enjoin them from allowing the other disqualified bidders, even or Anders as a disqualified bidder, from resubmitting bids. If we're not technically acceptable, TRAC says you cannot get those bidders a submission. But because we did comply, we ask this Court affirm. Thank you. Okay. Could I address the pricing briefly? No, I think we're done. Thank you. Thank you, Your Honor. Mr. Jordan. I won't address price, ignore the injunction order. I think Oak Grove and Metalcraft are clear on those. I'll focus on the issues. I didn't let them argue that. So address the three deficiencies. Sure. Sure. So the first one, the completion report. This is where the trial court erred as a matter of law with respect to how it read the solicitation. I think it's important to... Did they not supply some sample dive logs from the prior contract? So that is not a completion report. I think what's clear here is that a sample... If you look at PWS paragraph 14, and the contracting officer specifically noted this, is that what they did is they provided each of the various things within PWS paragraph 14. And that's the table of contents that counsel pointed to on 5981. Right. Then he also pointed to these daily dive logs that have been filled out in 5982 to like 5988. So those are not a completion report. Those are the various record-keeping items within PWS paragraph 14. And then at the bottom, towards the end of paragraph 14... Wait a second. Why are they not completion reports? Because looking at the text of paragraph 14, it says, in addition, a completion report. So that makes clear that the record-keeping document lists in that paragraph, in PWS paragraph... Well, that's for inspection dives. In addition, a completion report shall be prepared following all inspection dives. And what you heard from opposing counsel today is that what we have here are not inspection dives. They're some other kind of dive. So putting aside the failure to raise that argument, I think what I would do is read that in conjunction with the section L&M requirements to submit the sample completion report. In section L&M, it says a sample completion report. And the following sentence talks about the condition of items inspected. And so reading that in conjunction, which the trial court failed to do, was read L&M in conjunction with C, where the performance work statement is. If one reads that and gives meaning to the entire whole, one sees that record-keeping has job hazard analysis on what they're saying is their completion report. Job hazard analysis is item C on that. And so the completion report is the final item within PWS paragraph 14. And it defines it within that as including a description of condition. In their completion report table of contents, as the final item, they call it, their idiosyncratic term, condition report. And that's entirely absent in the 15 pages that follow. The court explained that. The SSEB said, you submitted all the paragraph 14 items, not a completion report. It was documented. It follows with the text of solicitation. And the trial court did not give meaning to that. I see my time has expired. I'm happy to address the lawsuit. I want you to go and deal with the other two. The lost diver report, you heard the argument that that simply is a severed umbilical cord and nothing more. What's your response to that? So that's a post hoc argument made by Anders and counsel following the technical unacceptability finding. The support for that comes from Anders' own argumentation as to what should be good enough. As Galen makes clear, the court's evaluation, and I think it's also a very important context. This is the U.S. Army Corps of Engineers evaluating safety requirements for a dive. It's not appropriate for the trial courts to figure out what is good enough. In their own judgment, it's to defer to the court. And they said, we want to see, according to the manual requirements, a lost diver plan. We didn't find one. In the evaluation, it says, if this was a snake, I'm sure it would bite me. And they didn't see it. So we have this post hoc argument that might some way figure into something that could be, but there's no plan. And the other item. They say the lost diver plan is limited to a severed umbilical cord. That is not in the solicitation. Well, no, it's not. But I guess they're saying plain meaning of lost diver plan is severed umbilical cord. As best I can make out, that seems to be the argument. That seems to be their argument. But that's a decision for the court to make in terms of whether or not the plan was good enough. I think a sort of implication of adopting the argument is to say, well, if an agency requires you to submit something, you can simply have a one sentence thing, or just do a pro forma submission. And that should be good enough as a matter of law. And I think that's a very troubling implication. Would you concede, for at least purposes of this appeal, that they did submit an adequate severed umbilical cord plan? So the agency did not make that finding about the adequacy of that. There appears to be part of their solicitation where it discusses that. That's in the record before this court. But that's the determination for the agency to make. And I think that's what the government have. I mean, it would seem to me it's possible, at least, that you may have been arbitrary and capricious. I don't know the relationship between a lost diver and a severed umbilical cord. But maybe it truly is well known to everyone in that field that those are synonyms. And what is to prevent the government from sort of getting away with changing the requirements by not recognizing, for example, that those are synonymous. And that when they submitted a severed umbilical cord plan, they were effectively submitting a lost diver plan. Sure. So I think Galen talks about that. And then this brings up this issue of what they raised in their protest. And the remedy, too. I think what the trial court did is said, this is good enough. I know what an umbilical cord is as the trial court. I'm going to accept this. They could have potentially made an ambiguity argument if they wanted to. There's blue and gold. They didn't put any evidence of how people in the industry understood a lost driver plan, right? I'm not aware of any other than their own say so. What did the CO say about this? Did he address or she address the lost umbilical, the severed umbilical cord issue? So the CO agreed with the SSEB, which said they couldn't find it. And then all that argumentation came after the technical on acceptability finding. And they did not agree with it because they couldn't find a lost diver plan. I'm happy to address the outline requirement. Why don't you do that briefly? Sure. So again, I think, you know, as I mentioned earlier, I think a troubling implication of accepting the trial court's logic is to effectively say, one can submit pro forma box checking things. And that can, therefore, as a matter of law, constitute an acceptable thing. And so somebody can submit a bad outline, one sentence statement, say here is an outline. And that as a matter of law, that's acceptable. I think that's a troubling implication. The court has discretion. This court is governed by Galen, which looks to whether or not it was reasonable consistent. It was well described in the technical on acceptability memo, where they state why this outline was not complete. And it's an inherent part of the contracting process. Where do we find that? So the instructions to offer say that offers are instructed to submit a well-written proposal. But the CO's determination that the outline was insufficient. Yeah. So that's on appendix page 6783 through 84, which is administrative record page 2081 through 82. That is the memo where the contracting officer said you don't have a completion report. You don't have the administrative outline, the lost diver plan, and the address of the president. What page? Appendix page 6783. 6783. And before the trial court, it was AR-2081 in the following few pages. That's the contracting officer's determination where it was found to be technically unacceptable. And the three reasons are given, explained. The SSCB made further findings, which the contracting officer adopted. Notably with the outline requirement, the contracting officer explained why she disagreed with the source selection board. The source selection board looked at these forms and noted it in the comments saying, I think this is, they seem to be good enough, but they didn't actually have an outline. That was explained. And the trial court even recognized that they did have this discretion. And so given the APA standard, this court should not substitute its judgment for the trial court and should defer to the experts on diving, which is the Corps of Engineers. Is there a contract right now? So my understanding is that they are in a limbo state. Most of the diving needs for southern Louisiana are being met internally with the agency's own resources and one-off dives are done on an as-needed basis. So that's the current state. The other side says if, in fact, their bid was technically unacceptable or we were to rule that way, deferring to the government, then solicitation is blown up. Government has to completely start anew. What's your response to that? Yeah. So I think we'd be in the position we would be in when they brought the protest, which is after 14th amendments, we were in this limbo state where the agency could decide, let's amend again, let's cancel. We're in this limbo state. It's determined what we do. And I think that's the call for the agency to make in terms of how it wants to go forward with meeting its diving needs in southern Louisiana. So if the court were to find that, as I said, a possibility might be an amendment, a possibility may be cancellation or something else. But that's the decision for the court to make. Do the FAR requirements affect what the government would do under those circumstances in which we affirm the technical noncompliance of the bid? Are you referring to the two? The two FAR issues. The two FAR issues. So that would not really address anything because it would be, one is talking about whether the agency explained their reasons for disagreeing with their protests. And if the court finds that they were not technically acceptable, that's an entirely academic issue. There's really nothing to explain. They're talking about an internal thing. And then the amendment description, I can't see as a matter of law how that's prejudicial. It's literally saying that the summary of the following pages was too brief. So I can't see how that makes out a violation just as a matter of law. So I think if this court were to remand it to the trial court, it would just be a formality. I can't see anything there. There was a suggestion that I at least inferred from Mr. Forrester that his FAR issues could impact not only how the agency goes forward if it does, but whether the other bidders might be permitted to participate in it. That potentially he could get an injunction against those other bidders. That was at least what I inferred he was saying. What's your response to that? Well, we start with a clean slate. So, you know, if the agency, you know, in the next step it takes commits an error, I'm sure there might be another protest. But I mean, we're starting with a clean slate effectively. The other bidders are currently deemed to have submitted technically unacceptable bids. Is that right?  Thank you.